FILED

May 13 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ jenniferv        DEPUTY

Anton Ewing (*pro se*)
3077 Clairemont Drive #372
San Diego, CA 92117
anton@antonewing.com.
(619)719-9640

Plaintiff

# THE UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Anton Ewing, an individual, | Civil Case No.: **'19 CV 897   WQHAGS** |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Charter Financial Publishing Network, Inc., a Delaware corporation; | **TCPA 47 USC §227(b)(1)(C) – Junk Fax** |
| | **TCPA 47 USC §227(c)(5)** |
| Defendant. | |
| | **'19 CV 897   WQHAGS** |

Plaintiff Anton Ewing ("Plaintiff"), complains against Defendant Charter

Financial Publishing Network, Inc. ("Charter") and alleges as follows:

## I.    INTRODUCTION

1.    The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter*

*alia*, illegal junk faxing to Plaintiff's phone through the use of an ATDS is

expressly alleged against Defendant Charter Financial Publishing Network, Inc. Said Defendant sent a junk fax, without permission and devoid of a pre-existing business relationship, to 760-269-3107.

2.      Said Defendant used a business address that Plaintiff had last used in 2009. Defendant's database is over ten years old.  Plaintiff has not been at, used or occupied 11415 W. Bernardo Court, San Diego, CA 92127 in over ten years.

3.      Defendant also fax to provide opt-out information on the junk fax.

4.      Defendant sent, delivered and transmitted the junk fax on May 10, 2019 at 9:30AM.

5.      Defendant failed to include the phone number from which the fax was sent on the fax itself.  However, Plaintiff believes that the fax came from 732-559-7808.  A copy of the illegal junk fax is attached as an exhibit to this complaint and hereby incorporated by this reference as if fully set forth herein.

6.      Charter has been illegally faxing Mr. Ewing, without his consent, with autodialed "robocalls" calls using an ATDS.  Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Charter to change their ways.

## II. PARTIES

7.      Plaintiff Anton Ewing is a citizen of California who conducts business in California, in this District.

8.      Defendant Charter is not registered in and but unlawfully doing business in California including San Diego County as a retailer of FA Magazine.

### III. JURISDICTION AND VENUE

9.      This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

10.     This Court has personal jurisdiction over CHARTER because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, CHARTER made illegal spam fax robocalls to Mr. Ewing, while he was in California.   Charter has also subjected themselves to personal jurisdiction in California because they are running and abetting said criminal operation.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b).  Charter through their dba's and agents, initiated the primary junk fax calls to Plaintiff.  Plaintiff was spam faxed at 760-269-3107 by Charter.

11.     Plaintiff has expressly stated exactly what phone number Defendant used to fax Plaintiff, as well as an exact date of one of the calls, to which number the calls were made, what was sent via the fax and that the call was made with an ATDS. All of this meets the particularity requirements for a cause of action. Plaintiff's phone number is not a business phone. Plaintiff's phone is registered on www.donotcall.gov on September 14, 2016, more than 31 days prior to the junk

fax.

12.    CHARTER does substantial business in this District.  CHARTER has purposefully directed its activities to California and advertises that it does business in California.

### IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

13.    The TCPA provides a private cause of action to persons who receive faxes in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.    The TCPA makes it unlawful to make junk fax solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

15.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

16.    Plaintiff Ewing alleges that Defendant Charter Financial Publishing Network, Inc. placed repeated automated telephone calls to Plaintiff Ewing's phone (760-269-3107) from their phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated junk faxes to Plaintiff Ewing on May 10, 2019.  Those allegations are true and are sufficient to establish the elements of a TCPA claim.

**V. STANDING**

17.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviEwing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

18.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendant;

    C. and is likely to be redressed by a favorable judicial decision.  See,

         *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong**

19.    Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was fax on his phone by Defendant.   Such junk faxes are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry").  As well, Plaintiff had no prior business relationship with Defendant prior to receiving the harassing and annoying faxes by Charter Financial Publishing Network, Inc.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.  In the instant case, it was Plaintiff's phone that was faxed and it was Plaintiff who owns and pays for the fax machine.  It was Plaintiff's personal

privacy and peace that was invaded by Defendant's persistent junk faxes using an ATDS, despite Plaintiff having no prior business relationship with Defendant and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.  Plaintiff has never before even heard of Defendant.

**The "Traceable to the Conduct of Defendant" Prong**

20.    The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendant. In the instant case, this prong is met by the fact that the calls to Plaintiff's phone were placed either by Defendant directly, or by Defendant's agent at the express direction and control of Defendant.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

21.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each fax made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for

1  Relief request injunctive relief to restrain Defendant from the alleged abusive
2
3  practices in the future. The award of monetary damages and the order for
4  injunctive relief redress the injuries of the past and prevent further injury in the
5
6  future. Because all standing requirements of Article III of the U.S. Constitution
7  have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff
8  has standing to sue Defendant on the stated claims.
9
10 22.   "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and
11 invasions of privacy in TCPA actions are concrete" injuries that establish standing.
12
13 See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS
14 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court
15 held that a violation of the TCPA represents a concrete injury because "[t]he
16
17 history of sustaining claims against both unwelcome intrusion into a plaintiff's
18 seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have]
19 traditionally been regarded as providing a basis for a lawsuit.'" *Mbazomo*, 2016
20 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at
21 1549-50). The court declined to follow Romero, explaining that Romero
22 "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A
23
24 plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged
25 harms suffered." Id.  *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016,
No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

23.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*. However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id*.

24.   Here, Plaintiff alleges that Defendant Charter contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. The calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant Charter's product. Additionally, Plaintiff declares that he has never heard of Defendant Charter, visited any location operated by said Defendant prior to the harassing and annoying junk faxes, nor provided his telephone numbers to said Defendant or consented to receive faxes from Defendant. Plaintiff also has had no prior business relationship with Defendant. Plaintiff had no reason to be in contact with Defendant Charter nor has he ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendant used ATDS in sending their fax solicitation messages.

25.   In Plaintiff's case, the allegations establish that he did not give prior express consent. He declared that he was "the regular user and subscriber to the cellular telephone number at issue." He also declared that he has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant] or consented to receive text messages from [Defendant]." As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendant to send the offending faxes.

# VI. FACTUAL ALLEGATIONS

## A. Charter Financial Publishing Network, Inc.

26.    One of CHARTER's strategies for marketing its services is placing junk fax robocalls to those who have not consented to receive such solicitations, including Plaintiff.

27.    CHARTER uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

28.    A third party sold leads to CHARTER and is the marketing agent for Charter.

## B. Plaintiff

29.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## C. Telephone numbers 760-269-3107

30.    A phone number beginning 760-269-3107 is registered to Mr. Ewing.

31.    760-269-3107 is on the National Do Not Call Registry.

32.    Mr. Ewing answers calls made to 760-269-3107.

33.    Mr. Ewing pays the phone bills for 760-269-3107.

## D. CHARTER FINANCIAL PUBLISHING NETWORK, INC.'s Illegal Junk fax Robocalls to Plaintiff

34.     On May 10, 2019, a call to 760-269-3107, which is Mr. Ewing's telephone, caused his phone to ring. Mr. Ewing picked up. The person on the other end wasn't anyone Mr. Ewing knew.  In fact, it wasn't a person at all; it was a junk fax.

35.     The CHARTER junk fax robocalls were made to Mr. Ewing while he was in California, in this District.

36.     The CHARTER junk fax robocalls were made to Mr. Ewing after CHARTER knew of his desire to never been solicited via junk fax calls, which is publicly known in this District.

## VII. FIRST CLAIM FOR RELIEF

**(Non-Emergency Fax Robocalls to Telephones, 47 U.S.C. § 227(b)(1)(C))**

37.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

38.     The foregoing acts and omissions of CHARTER  and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(C), by making non-emergency junk fax robocalls to the telephone number of Plaintiff without prior express written consent.

39.     The defendant in this matter is vicariously liable for the acts and actions of the lead source under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.  Discovery will reveal the name of the lead agent.  Charter

Financial Publishing Network, Inc. controlled the lead agent and had actual knowledge of the TCPA violations.

40.    Defendant Charter has been sued more than three times for illegal junk faxing by others.

41.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

42.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

43.    Plaintiff also seeks a permanent injunction prohibiting CHARTER and its affiliates and agents from making junk fax robocalls to telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Telephones, 47 U.S.C. § 227(b)(1)(B))

44.    Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

45.    The foregoing acts and omissions of CHARTER and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency junk fax calls to the personal telephone 760-269-3107 number of Mr. Ewing without prior express written consent.

46.   Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

47.   Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

48.   Mr. Ewing also seeks a permanent injunction prohibiting CHARTER and its affiliates and agents from making non-emergency junk fax calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Junk fax Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

49.   Plaintiff reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

50.   The foregoing acts and omissions of CHARTER and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making junk fax solicitations to residential telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

51.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

52.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

53.     Plaintiff also seeks a permanent injunction prohibiting CHARTER and its affiliates and agents from making junk fax solicitations to residential telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for this Honorable Court to enter judgment against Defendant Charter Financial Publishing Network, Inc. as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by CHARTER FINANCIAL PUBLISHING NETWORK, INC. violate the TCPA;

C. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every fax;

D. For an injunction prohibiting Defendant from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

E. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

F. $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

G. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

H. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of

business at beginning of call;

I. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

J. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone

number on the DNC registry; and

K. For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  May 13, 2019

_____
Anton Ewing,
Plaintiff

Exhibit A



# Don't miss a single
# **FREE** issue of *FA magazine*!
# **Renew today!**
# Fax to 732-559-7808

SIGNATURE                                                          DATE

_____          _____

NAME                                                               TITLE

ANTON EWING

COMPANY

ANTON A EWING JD CPA

STREET

11415 W BERNARDO CT

CITY/STATE/ZIP                                                     EMAIL

SAN DIEGO, CA 92127

PHONE

_____

❏ **YES!** Account #: 867723
**Renew my FREE subscription to *FA* magazine**

❏ No thank you.

1. Do you or your firm personally recommend or sell investments or provide investment advice? ❏ Yes    ❏ No

2. Which of the following best describes your primary business activity? (check one):
   (1) ❏ Independent Financial Planner/Advisor
   (2) ❏ Full Service Securities Firm
   (3) ❏ CPA/Planner
   (4) ❏ Insurance
   (5) ❏ Bank Investment Advisor
   (6) ❏ Registered Investment Advisor (RIA)
   (9) ❏ Other _____

3. What is your income source? (check one):
   (A) ❏ Commission only    (B) ❏ Fee only    (C) ❏ Fee & commission

4. What are your total assets under management?
   (6) ❏ $100 million or more      (5) ❏ $50 million–$99.9 million
   (4) ❏ $25 million–$49.9 million  (3) ❏ $10 million–$24.9 million
   (2) ❏ $1 million–$9.9 million    (1) ❏ Under $1 million

*Please make corrections to address where necessary*                                    FA-RN

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS111731
Cashier ID: naparici
Transaction Date: 05/13/2019
Payer Name: ANTON EWING
-----------------------------------
CIVIL FILING FEE
 For: ANTON EWING
 Case/Party: D-CAS-3-19-CV-000897-001
 Amount:        $400.00
-----------------------------------
CASH
 Amt Tendered: $400.00
-----------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.